UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KARL CORNELIOUS COTTON,

               Petitioner,

v.

THOMAS MACKIE,

               Respondent.

_____/

Case No. 1:15-cv-331

Honorable Robert J. Jonker

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Karl Cornelious Cotton[1] is incarcerated with the Michigan Department of Corrections (MDOC) at Chippewa Correctional Facility (URF) in Chippewa County, Michigan.  On April 25, 2012, a Kent County Circuit Court jury found Petitioner guilty of perjury in response to an investigative subpoena regarding a crime punishable by imprisonment for life, MICH. COMP. LAWS § 767A.9(1)(b).  On May 31, 2012, the court imposed a sentence of 16 to 40 years.

Petitioner appealed to the Michigan Court of Appeals.  The court of appeals affirmed the judgment of conviction and sentence in an opinion entered on December 19, 2013.

Petitioner subsequently filed an application for leave to appeal to the Michigan Supreme Court.  The Michigan Supreme Court denied the application on May 27, 2014, because it was not persuaded that the questions presented should be reviewed by that court.

---

[1] In the petition (ECF No. 1), and in many of the state-court documents, Petitioner's name is identified as "Karl Cornelius Cotton, Jr."  The Court will use the spelling of Petitioner's name that appears in his MDOC profile.  *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=488930.

Petitioner timely filed his habeas corpus petition in March 2015, raising the following issues:

I.     Was there sufficient evidence proven by the prosecution beyond a reasonable doubt that the defendant was guilty[?]

II.    Is the prosecutor prohibited from providing defense counsel and the court of appeals copies of the petition for investigative subpoena by MCL 767a.(2)(5) for the reason that it is confidential and not permitted to be copied for public use?

III.   Was the Defendant denied the effective assistance of counsel at trial where counsel failed to object to a witness not being placed under oath at trial, failed to impeach a witness, and failed to subject the prosecutor's case to adversarial testing, which amounted to a denial of the defendant's constitutional right to due process of law, a fair trial, and effective assistance of counsel.  U.S. Const. Amends. V, VI, XIV?

IV.    Was the Defendant denied a fair trial where the key prosecution witness was never sworn to testify under oath pursuant to MRE 603, denying him his constitutional right to confrontation?  U.S. Const. Amends. V, VI, XIV.

(Pet., ECF No. 1, PageID.5-9.)

Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they meritless and/or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.     Factual allegations

Petitioner's conviction stems from testimony that he gave in response to a prosecutor's investigative subpoena.  On March 5, 2011, police discovered the body of Jamie Powell in Walker, Michigan.  She had died from multiple gunshot wounds, so the police department opened a homicide investigation.  As part of their investigation, the police became

interested in questioning Petitioner.  They issued him a subpoena to give testimony about his knowledge of any facts surrounding Ms. Powell's death.[2]

Before the interview with Petitioner, Detective Brandyn Heugel learned from the Law Enforcement Information Network (LEIN) that Petitioner's telephone number as of March 8, 2011, was 269-519-7137.  (ECF No. 10-8, Trial Tr. II, 184.)  This number was associated with a Boost Mobile account activated on December 22, 2010.  (*Id.* at 137, 187.)  Heugel also learned that Petitioner was on parole, and she spoke to Petitioner's parole officer, Angela Biggart.

Biggart served as Petitioner's parole officer from December 2010 to May 2011, in Benton Harbor, Michigan, after Petitioner was released from a supervision program known as "TRV."  (*Id.* at 98-99, 108-10.)  As of January 2011, Biggart had the following phone number in her records as the number to contact Petitioner: 269-861-0865.  (*Id.* at 100.)  Biggart had difficulty reaching Petitioner at that number, so she asked him if there was another number where he could be reached.  Petitioner gave her the following number:  269-519-7137.  (*Id.* at 101-05.)  In April, Petitioner gave Biggart a new number:  269-519-7464.  (*Id.* at 106, 185.)  This number had been activated on March 6, 2011, one day after the shooting of Jamie Powell.  (*Id.* at 138, 196.)

During the course of her investigation, Detective Heugel obtained a call log for the 7137 number.  She discovered that the phone number for Petitioner's girlfriend, Kendra Thomas, received over 400 calls from the 7137 number in the weeks leading up to the murder (February 20 through March 8, 2011).  (*Id.* at 192-93, 195.)  The phone number for one of Petitioner's acquaintances, James Coleman, received over 200 calls from the 7137 number during that time period, and Petitioner's father received 19 calls.  (*Id.* at 194-95.)  In addition, Petitioner's parole officer received at least one call from the 7137 number in February 2011.  (*Id.* at 241.)

---

[2] Petitioner was eventually convicted of murdering Powell and sentenced to life in prison.

Heugel also obtained voicemail messages left at the 7137 number.  Some of these messages were intended for a person identified by the caller as "K.C.," and one of the messages was an automated message from the MDOC for Karl Cotton.  (*Id.* at 230.)  The prosecutor played these messages for the jury.

The police interviewed Petitioner under oath on June 30, 2011.  (*Id.* at 183.)  The assistant prosecutor read a transcript of this interview to the jury.  (*Id.* at 197-229.)  In the interview, Petitioner testified that his current cell phone number was 519-7464, and that he had acquired it about two weeks after he was released from "TRV."  (*Id.* at 207-08.)  He never used another person's cell phone on a regular basis.  (*Id.* at 208.)  He never had another cell phone number.  (*Id.* at 209, 224, 228.)  He acknowledged knowing James Coleman, and would speak with him on the phone "almost every day."  (*Id.* at 218.)  He also acknowledged that some people call him "K.C."  (*Id.* at 213.)

When the 7137 number came up in the interview, the following exchange occurred between Detective Heugel and Petitioner:

DETECTIVE HEUGEL:  Okay.  Then what's the number 269-519-7137?

THE WITNESS:  I don't know.  I don't – that's not my number, so –

DETECTIVE HEUGEL:  According to your parole agent, it is or it was until recently.

THE WITNESS:  She must have –

DETECTIVE HEUGEL:  So, no, I don't think so.  That's been on your records for quite a while.

THE WITNESS:  She must have had a wrong number.  She is not --

DETECTIVE HEUGEL:  You've got a chance here to change your testimony.

THE WITNESS:  I don't have to change nothing.

4

DETECTIVE HEUGEL:  Yes, you do.

THE WITNESS:  She's . . . never called me from that number.

. . .

THE WITNESS:  The only number I remember giving my parole officer is 519-74–.

DETECTIVE HEUGEL:  Karl, that's the new number you gave her.

THE WITNESS:  Okay.

DETECTIVE HEUGEL:  And I have the date that you changed that with her.

THE WITNESS:  Okay, if that's what you say.

DETECTIVE HEUGEL:  You're going to stick to that?

THE WITNESS:  Stick to what?

DETECTIVE HEUGEL:  You're going to stick with . . . that's your only phone number and that's the number that you've had for a long time?

THE WITNESS:  I told you that.

(*Id.* at 227-28.)

After hearing the evidence, the jury found Petitioner guilty.

## II.    AEDPA Standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v.*

*Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v.*

*Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly

established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135

S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not

include decisions of the Supreme Court announced after the last adjudication of the merits in state

court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the

legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642,

644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state

court applies a rule different from the governing law set forth in the Supreme Court's cases, or if

it decides a case differently than the Supreme Court has done on a set of materially

indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy

this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*,

135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words,

"[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ground One:  Sufficiency of the Evidence

Petitioner argues that there is insufficient evidence to prove that he is guilty of perjury in response to an investigative subpoena. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and the AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals examined Petitioner's claim as follows:

> When considering the sufficiency of the evidence, "a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).  Further, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

> MCL 767A.9(1)(b) requires proof of four separate elements: (1) defendant was under oath, (2) the examination took place pursuant to the investigative subpoena statute, (3) defendant provided false testimony, and (4) defendant knew the testimony was false when he made it.

> In this case, the prosecution's theory was that defendant falsely testified during questioning under oath pursuant to an investigative subpoena regarding his usage of a cell phone with the 7137 number. During questioning, defendant stated that other than one that he had a long time ago, the number for which he had forgotten, the only cell phone he has had is one with the 7464 number. He also denied having a cell phone with the 7137 number or giving the 7137 number to his parole officer as his contact number. However, his parole officer testified at trial that defendant gave the 7137 number as his contact number. Further, the 7137

8

number was frequently used to contact defendant's father, girlfriend, best friend and sister, and voicemails to the number were left for defendant by his girlfriend, and defendant contacted the same people while in jail as were contacted previous to his arrest from the 7137 phone. This evidence and the reasonable inferences that can be made from it, if believed, sufficed to allow a rational trier of fact to conclude beyond a reasonable doubt that the 7137 cell phone number was used by defendant, and his answers to the contrary given under oath pursuant to the investigative subpoena, were false.

Finally, with regard to the fourth element, there was sufficient evidence to show that defendant knowingly lied. The prosecution provided circumstantial evidence that defendant was lying about the number to avoid association with the shooting death that Heugel was investigating. Defendant deactivated the 7137 number three days after the shooting death, and activated the 7464 number just one day after the shooting death. From this evidence a rational jury could draw a reasonable inference that defendant knew the 7137 number belonged to him, and deactivated it to disassociate himself from the shooting death. Then, he lied at the investigative subpoena interview to stay out of trouble. *Nowack*, 462 Mich at 400. Therefore, there was sufficient evidence for a reasonable jury to find the elements of MCL 767A.9(1)(b) were proven beyond a reasonable doubt. *See Wolfe*, 440 Mich at 515.

*People v. Cotton*, No. 311956, 2013 WL 6689100, at *2-*3 (Mich. Ct. App. Dec. 19, 2013).

The court of appeals relied upon the standard in *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992). The *Wolfe* court acknowledged that the Michigan courts were simply applying the *Jackson v. Virginia* standard. *Wolfe*, 489 N.W.2d at 750. Thus, at a minimum, the Michigan Court of Appeals applied the right standard.

Moreover, the court of appeals applied the standard correctly. Petitioner argues that he did not make a false statement, but the evidence indicates otherwise. He repeatedly asserted that the 7464 number was his only phone number, and he denied association with the 7137 number, even though his friends and family received numerous calls from that number, and he gave it to his parole officer as his contact number. He also claimed that he had obtained the 7464 number two weeks after he was released from TRV, which was in the fall of 2010. However, that number was not registered to him until March 2011.

9

Considered in a light most favorable to the prosecution, the evidence was sufficient to permit the jury to find that the 7137 number belonged to him and that Petitioner was guilty of perjury because he knowingly testified otherwise.  The court of appeals' determination to that effect was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### IV.   Ground Two:  Access to Petition for Authorization of Subpoena

Petitioner argues that he was deprived of due process when the prosecutor denied his request for access to the prosecutor's petition for authorization to issue an investigative subpoena.  The prosecutor presented this petition to the district court in March 2011.  The district court granted it, and held that the prosecutor had established good cause to waive the seven-day service period for taking testimony, and to keep the subpoena request confidential.  (ECF No. 10-11, PageID.479.)  Michigan law provides that an investigative subpoena may not be served less than seven days before the date set for taking testimony, unless the judge authorizing the subpoena has shortened that time period for good cause.  MICH. COMP. LAWS § 767A.4(2).  In addition, an application for an investigative subpoena must remain confidential.  MICH. COMP. LAWS § 767A.2(5).

Before trial, Petitioner's counsel filed a motion arguing that the criminal case against Petitioner should be dismissed because the prosecutor's request to waive the service period for the investigative subpoena was not supported by good cause.  Counsel asked for a copy of the subpoena petition and requested an evidentiary hearing on whether the waiver of the service period was supported by good cause.  The trial court denied the motion, noting the district judge's discretion to reduce the time for service.  (ECF No. 10-5, 2/10/2012 Mot. Hr'g Tr. 8.)

On appeal, Petitioner argued that it was error for the circuit court to accept the finding of the district judge.  Petitioner also complained that he had not been provided access to the subpoena petition.  It was not part of the court records, and the prosecutor had refused to provide a copy of it because it was confidential under MICH. COMP. LAWS § 767A.2(5).  Petitioner argued that the court of appeals should order the prosecutor to release the subpoena request for review.

The Michigan Court of Appeals held that Petitioner's right to due process was not violated because he could have sought *in camera* review of the subpoena petition, and this satisfied his process rights.  *Cotton*, 2013 WL 6689100, at *3 (citing *People v Stanaway*, 521 N.W.2d 557, 574 (Mich. 1994)).  In addition, there is no possibility that any information in the petition could have changed the outcome of Petitioner proceedings.  A violation of the seven-day service requirement would not have led to the exclusion of his testimony because "the exclusionary rule is not the proper remedy in such cases."  *Id.* at *4 (citing *People v. Gadowski*, 731 N.W.2d 466, 471-72 (Mich. Ct. App. 2007)).  Moreover, even if the subpoena petition revealed constitutional errors, Petitioner's conviction would still stand because "deprivation of a defendant's constitutional rights does not create a license to commit perjury."  *Id.* (citing *People v Jeske*, 341 N.W.2d 778, 782 (Mich. Ct. App. 1983), *overruled on other grounds by People v Lively*, 680 N.W.2d 878, 881 (Mich. 2004)).

Petitioner has not identified any error in the Michigan Court of Appeals' decision. Nor has he identified any clearly-established law providing that a party subject to an investigative subpoena must, as a matter of due process, be given seven days after service of the subpoena before submitting to an interview, or have access to the contents of subpoena petition in order to challenge a charge of perjury.  Indeed, any defects in the subpoena petition or the waiver of the service

11

requirement are irrelevant to Petitioner's conviction because "as the Court has consistently held, perjury is not a permissible way of objecting to the Government's questions. 'Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them.'" *United States v. Wong*, 431 U.S. 174, 180 (1977) (quoting *Bryson v. United States*, 396 U.S. 64, 72 (1969)).   In other words, it does not matter whether the Government violated Petitioner's constitutional rights when seeking a subpoena.   If he lied under oath, he can be convicted and punished for it.

Thus, Petitioner's claim is meritless.

## V.     Ground Three: Ineffective Assistance of Counsel

Petitioner claims that his counsel was ineffective in several ways: (1) counsel failed to object to the testimony of a witness who was not placed under oath; (2) counsel failed to impeach a witness; and (3) counsel failed to subject the government's case to adversarial testing.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as

they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  The question before the Court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

### A.  Failure to Object to Witness

Petitioner contends that counsel should have objected to the "testimony" of Blair Lachman, the assistant prosecutor who read the transcript of the investigative interview to the jury. Petitioner contends that Lachman's "testimony" was improper because he was not sworn in as a witness and he testified to matters that were not within his personal knowledge.

The Michigan Court of Appeals rejected the premise that the assistant prosecutor testified as a witness:

> Defendant is correct that "[t]he right of confrontation insures that the witness testifies under oath at trial . . . ." *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001) (quotation and citation omitted). Further, MRE 603 and MCL 600.1432(1) provide that all witnesses must be sworn in before testifying. However, we conclude that an individual simply reading a transcript into evidence is not a witness as contemplated by MRE 603 and MCL 600.1432(1) and the Confrontation Clause because the person is not giving evidence about an event that they were present at and observed. See Black's Law Dictionary (9th ed) (defining "witness" as "[o]ne who sees, knows, or vouches for something"). Thus, the reasoning behind requiring an oath, to "impress upon the oath taker the importance of providing accurate information," is not present under these circumstances. *People v Ramos*, 430 Mich 544, 548; 424 NW2d 509 (1988). Further, our Supreme Court has implicitly agreed that an oath is not necessary in similar circumstances. See *People v Chilton*, 394 Mich 34, 38; 228 NW2d 210 (1975) (affirming a case where a trial judge read transcript into the record). Additionally, defendant cannot show that the reading of the testimony into evidence without an oath having been administered affected his substantial rights because the transcript itself was admitted as evidence.

Because there was no plain error, defendant's argument fails under plain error review. *Carines*, 460 Mich at 764.

Defendant also argues in his Standard 4 Brief that the prosecutor's reading of the transcript was inadmissible hearsay. . . .  [W]e find that defendant's claim has no merit because the statements made by defendant during the investigative subpoena interview constitute admissions by a party-opponent, and are thus not hearsay under to MRE 801(d)(2).

*Cotton*, 2013 WL 6689100, at *4.

The Court then rejected Petitioner's ineffective-assistance claim, because any objection to Lachman's "testimony" would have been futile. *Id.* at *5.

Petitioner does not identify any error in the state court's conclusions, or any clearly-established law requiring that the reader of a transcript be sworn in.  Moreover, he cannot establish prejudice to the outcome of his proceedings because the transcript of his interview was admitted as an exhibit at trial, and was available for the jury to review.  (Trial Tr. II, 197.)  Thus, objecting to Lachman's "testimony" would not have excluded any material evidence or served any purpose whatsoever.

## B.  Failure to Impeach Witness

Petitioner argues that counsel should have impeached Detective Heugel.  Petitioner contends that Heugel's testimony at the preliminary examination hearing conflicted with her testimony at trial.  The Michigan Court of Appeals properly rejected this claim:

 Defendant also alleges defense counsel was ineffective for failing to impeach a witness. Defendant alleges that Detective Heugel stated, during the preliminary examination, that she had never spoken with defendant. Then, during trial, evidence was presented that she had spoken to defendant at the investigative subpoena. However, we find that this argument has no merit because the preliminary examination transcript reflects that the detective testified that she had not spoken to defendant before the investigative subpoena. Therefore, because the testimony given at trial was not inconsistent with the preliminary examination testimony, defendant has failed to demonstrate that defense counsel's failure to impeach the witness fell below an objective standard of reasonableness or that the failure to impeach the witness affected the outcome of the proceedings. *Frazier*, 478 Mich at 243.

14

*Cotton*, 2013 WL 6689100, at *5.

Review of the preliminary examination transcript supports the court of appeals' analysis. Heugel was asked, "To your knowledge, was [Petitioner] ever told before he gave testimony that he was a person of interest?" (ECF No. 10-3, Prelim. Exam. Tr. II, 15.) Heugel replied, "I never spoke to him, so I can't testify to what he was ever told." (*Id.*) In other words, Heugel was responding to what Petitioner was told "before he gave testimony"; she was not asserting that she never spoke to Petitioner at all. Thus, the court of appeals' decision is not based on an unreasonable determination of the facts. Moreover, it did not unreasonably apply *Strickland* to the facts of Petitioner's case. Heugel's preliminary examination testimony provided no basis for impeachment. Thus, Petitioner's counsel did not act unreasonably by failing to raise the issue.

Moreover, Petitioner cannot demonstrate prejudice because Heugel's credibility was not material to Petitioner's guilt. To determine whether he made a false statement, the jury only needed to consider the contents of Petitioner's preliminary examination testimony and the evidence that the 7137 number belonged to him, including the voicemails, the call logs, and the testimony from Petitioner's parole officer that he gave her the 7137 number. To determine whether he knowingly made a false statement, the jury only needed to consider the timing of his disclosure of the 7137 number to his parole officer, the number of calls made to Petitioner's family and acquaintances from that number, and the fact that he acquired a new number within days after Powell was killed. Heugel provided context for the investigative interview, but the material evidence of Petitioner's guilt did not depend on her testimony. Thus, the Court discerns no error in the court of appeals' decision, let alone error that satisfies the deferential standard for relief under § 2254.

## C.  Failure to Subject Case to Adversarial Testing

Petitioner also claims that his attorney was ineffective because he failed to subject the government's case to adversarial testing.  This claim stems from Petitioner's assertions that his counsel should have objected to the reading of transcript by Lachman and should have impeached Heugel using her preliminary examination testimony.  For the reasons stated in the previous sections, counsel's actions were not unreasonable and Petitioner has not demonstrated prejudice.  Thus, this claim is also meritless.

## VI.    Ground Four: Right to Confrontation

Petitioner contends that the state court proceedings violated his rights under the Confrontation Clause when the assistant prosecutor read the transcript of the investigative interview without being sworn in to testify.

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  As discussed in Section V, the court of appeals rejected this claim because Lachman was not a witness against Petitioner.  The Confrontation Clause was not implicated when Lachman read a transcript of Petitioner's statements at the investigative interview.

Petitioner has not identified any Supreme Court precedent holding that the reader of a transcript, where that transcript has been admitted into evidence, must be sworn in before reading the transcript to the jury.  Nor has he identified any precedent holding that the Confrontation Clause is implicated in these circumstances.  Indeed, several courts have held that the admission of a defendant's own statements does not implicate the Confrontation Clause because such statements are not testimonial.  *United States v. Jones*, 205 F. App'x 327, 342-43 (6th Cir. 2006); *United States v. Jones*, 314 F. App'x 883, 886 (7th Cir. 2009); *United States v.*

*Tolliver*, 454 F.3d 660, 665-66 (7th Cir. 2006).  Moreover, a rule that would require a court to give Petitioner an opportunity to confront himself regarding his own statements would make no sense.

Furthermore, any error at the trial-court level was clearly harmless, as the Michigan Court of Appeals aptly noted.  *See Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005) ("Confrontation Clause violations are subject to harmless error review.").  A violation of the Confrontation Clause requires reversal of a conviction only if it had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Id.* at 363-64 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A copy of the transcript of Petitioner's interview was admitted as a trial exhibit and given to the jury to review.  Thus, Lachman's reading of the transcript was not necessary or material to the prosecution's case.  The jury could read the transcript on its own.  In these circumstances, Petitioner cannot demonstrate that allowing Lachman to read the transcript to the jury had a substantial or injurious effect on the jury's verdict.

In short, Petitioner has not demonstrated that he is entitled to relief.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the

17

certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  March 8, 2018                              /s/ Ray Kent
                                                   United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).